| | |
|---|---|
| District Court, Denver County, Colorado<br>Court Address: 1437 Bannock Street, Denver, CO 80202 | DATE FILED: November 17, 2016 5:42 PM |
| Plaintiff:<br>**HELEN FOX and KENNETH FOX, individuals,**<br><br>v.<br><br>Defendant:<br>**VOLKSWAGEN GROUP OF AMERICA, INC., a corporation; VOLKSWAGEN AKTIENGESELLSCHAFT, a business entity, form unknown; AND DOES 1 through 10, inclusive;** | ▲COURT USE ONLY▲ |
| Attorney for Plaintiffs<br>Sarah McEahern<br>Hyde & Swigart<br>1525 Josephine St.<br>Denver, CO 80206<br>Phone Number: (303) 731-5493<br>FAX Number: (800) 635-6425<br>E-mail: sm@westcoastlitigation.com<br>Atty. Reg. #: 48401 | Case Number:<br><br><br>Division:<br>Courtroom: |
| **COMPLAINT FOR DAMAGES AND JURY DEMAND** ||

### Introduction

Plaintiffs, Helen Fox and Kenneth Fox, allege as follows against Defendants Volkswagen Group of America, Inc., Volkswagen Aktiengesellschaft (hereinafter "VW AG" and/or "defendants"), and DOES 1 through 10, inclusive, on information and belief, formed after an inquiry reasonable under the circumstances:

### Jurisdiction and Venue

1. Jurisdiction of this Court arises pursuant to general state jurisdiction, as all causes of action are alleged under Colorado common law and statutes.

**EXHIBIT 1**

2. Plaintiffs, Helen Fox and Kenneth Fox, are individuals residing in the County of Grand, State of Colorado.

3. Defendants "VW AG" are business entities doing business in the County of Denver, State of Colorado.

4. Venue lies with this Court pursuant to C.R.S. 6-1-103 because the transaction occurred in County of Denver, as the parties entered into the underlying lease or purchase contract in County of Denver.

5. Plaintiffs do not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise of defendants sued herein as Does 1 through 10, inclusive, under the provisions of Colorado Rules of Civil Procedure Rule 9. Plaintiffs are informed and believe and on that basis allege that defendants Does 1 through 10, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein, and are legally liable to Plaintiffs. Plaintiffs will seek leave to amend this Complaint to set forth the true names and capacities of the defendants whose true names are unknown together with appropriate charging allegations when ascertained.

6. Plaintiffs are informed and believe and thereon allege that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

7. Plaintiffs are informed and believe and on that basis allege that at all times mentioned herein each defendant whether actually or fictitiously named herein, was the principal, agent (actual or ostensible) or employee of each other defendant and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each defendant is liable to plaintiffs for the relief prayed for herein.

### Factual Allegations

8. On or about August 23, 2008, plaintiffs purchased or leased a 2009 Jetta Sportwagen (hereinafter subject vehicle), Vehicle Identification Number 3VWTL71K29M263935, from defendants' certified dealership Emich Volkswagen located at 1260 S. Colorado Boulevard, Denver, CO 80246. The window sticker attached to the subject vehicle advertised the car as "good clean diesel fun" capable of 40 miles per gallon on the

**EXHIBIT 1**

highway. Defendants represented that the 2.0L TDI engine, which was installed in plaintiffs' vehicle, would outperform all other vehicles in miles per gallon and would do so while emitting 25% fewer emissions into the air. Defendants knew on the day they sold the subject vehicle to plaintiffs that they had installed a "defeat device" which caused the subject vehicle to emit upwards of 40 times more pollutants into the air than any other passenger car on the road. Plaintiffs were unaware that the "defeat device" was embedded in the subject vehicle. Defendants issued a written warranty against the subject vehicle at the time of plaintiffs' purchase or lease. The written warranty includes an implied warranty of merchantability under Colorado law. Because the subject vehicle could not pass state emissions tests without the "defeat device," the subject vehicle was not merchantable on the day of purchase. As a result, defendants are in breach of the implied warranty of merchantability.

## Volkswagens' Admission

9. This case arises from defendants', Volkswagen Group of America and Volkswagen Aktiengesellschaft, September 3, 2015, admission that, for more than seven years, they had been intentionally, deliberately, and maliciously designing, manufacturing, and distributing hundreds of thousands of their purportedly "clean diesel" cars with a software algorithm (hereinafter "defeat device") embedded in the engine control module. The sole purpose of this algorithm was to detect when a state mandated emissions test was being conducted and to cause the subject vehicle's emissions system to switch to an operating mode that would enable the subject vehicle to appear to emit much lower emissions.

10. The engine control module would command the emissions system to run in this clean air mode ONLY when the engine control module determined that the vehicle was being operated under the testing conditions for the state mandated emissions testing. At all other times, the engine control module would command the emissions system to operate in such a way that the clean diesel vehicles would, in fact, emit up to 40 times the quantity of nitrogen oxides allowed for by state emissions standards. Plaintiff['s] vehicle is one of thousands of automobiles introduced into the Colorado market.

11. Since 2008, defendants claimed that the 2.0L TDI Clean Diesel engine was a "fantastic power train" that "gives very good fuel economy" that "is also good for the environment because it puts 25% less green house

**EXHIBIT 1**

gas emissions than what a gasoline engine would...[and is] clean enough to be certified in all 50 states." (Statement of Volkswagen Group of America, Inc.'s Chief Operating Officer Mark Barnes, to The Business Insider, October 9, 2009.)

12. Defendants used this fraud to allow them to position themselves as the market leader in automotive diesel sales in the United States, capturing 78% of the market by 2013, according to its own documents.

13. In addition to defendants' strong marketing techniques to raise consumer awareness of the TDI Clean Diesel Technology, defendants also emphasized the fuel efficiency of the TDI Clean Diesel. Defendants combined the alleged proficiencies of the engine with claims that the car had a greater mileage range on a single tank of gas than did the Toyota Prius, Mazda 3, Honda Civic HF, Ford Focus SE, and Toyota Corolla S, at the same time that it alleged the TDI was "90% cleaner than previous diesel engines."

14. When the EPA confronted defendants with the threat of withholding all "certificates of conformity" on the 2016 TDI vehicles, defendants admitted to the EPA that, beginning in 2009 through 2015, they had designed, manufactured, and installed a "defeat device" for the purpose of bypassing, defeating, or rendering inoperative elements of its diesel vehicles' emission control system.

15. As a result of investigations by the EPA and admissions by Defendants, the EPA issued Notices of Violation to Volkswagen Group of America finding that it violated the emissions statutes each time it installed the "defeat device" into a vehicle.

16. The Notices of Violation applied to the following vehicles equipped with the 2.0L TDI clean diesel engine (hereinafter referred to as the TDI Vehicles"):

| Model Year | Make and Model(s) |
|---|---|
| 2009 | VW Jetta, VW Jetta Sportwagen |
| 2010 | VW Jetta, VW Jetta Sportwagen |

**EXHIBIT 1**

| 2011 | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
|---|---|
| 2012 | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3, VW Passat |
| 2013 | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3, VW Passat |
| 2014 | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3,  VW Passat |
| 2015 | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3, VW Passat |

17.  Defendants knowingly and willfully installed a "defeat device" in the subject vehicle in order to market and sell the subject vehicle as having greater fuel efficiency and/or performance than would be possible if their subject vehicle complied with EPA standards.

18. Further, Plaintiffs allege that if the subject vehicle were designed and manufactured to comply with such emissions regulations, the vehicle will not have the fuel efficiency and performance characteristics that defendants marketed and represented the vehicle to have.

### Specific Allegations
### FIRST CAUSE OF ACTION
### Violation of the Colorado Consumer Protection Act
*Colorado Revised Statutes Title 6 Article 1*

19.  Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 18 of the Complaint, as though fully set forth herein.

20. The subject vehicle constitutes a "good" or "property" under C.R.S. 6-1-102.

**EXHIBIT 1**

21. Plaintiffs are actual consumers of the defendants' goods, services or property under C.R.S. 6-1-113(1)(a).

22. Defendants are "persons" under C.R.S. 6-1-102.

23. Pursuant to the Colorado Consumer Protection Act (hereinafter the "CCPA"), the following deceptive trade practices are prohibited: (b) Knowingly making a false representation as to the source, sponsorship, approval, or certification of goods, services, or property; (c) Knowingly making a false representation as to affiliation, connection, or association with or certification by another; (e) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;  (g) Representing that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; (i) Advertising goods or services with intent not to sell them as advertised; (u) Failing to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

24. Plaintiffs allege that defendants engaged in bad faith conduct and violated the CCPA in the following manner: (1) knowingly misrepresenting the approval,  certification, characteristics, ingredients, uses, benefits, or quantities of the subject vehicle and (2) knowingly misrepresenting the standard, quality, or grade of the subject vehicle, (3) advertising the subject vehicle with intent not to sell it as advertised; and (4) intending to induce plaintiffs to enter into a transaction by failing to disclose material information concerning the subject vehicle which information was known at the time of advertisement and sale. Defendants' actions occurred in the course of Defendants' business.

25. Plaintiffs further allege that Defendants' actions significantly impact the public as actual or potential consumers of Defendants' goods or property. Specifically, Defendants' misrepresentations, in the form of widespread advertisements, were directed to the market generally, leading to

**EXHIBIT 1**

the deception of both actual and prospective car buyers. *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

26. As a proximate result of Defendants' actions, Plaintiffs suffered actual harm. Therefore, Plaintiffs seek actual, punitive and statutory damages under the CCPA for violation of C.R.S. 6-1-105(1)(b), (c), (e), (i), (g), and (u).

27. Under C.R.S. 6-1-113(2)(b), Plaintiffs may also recover reasonable attorneys' fees and costs as determined by the court.

## SECOND CAUSE OF ACTION
### Violation of the Uniform Commercial Code
*Colorado Revised Statutes Title 4 Article 2*

28. Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 18 of the Complaint, as though fully set forth herein.

29. Plaintiffs are "buyers" of goods under C.R.S. 4-2-101(1)(a).

30. Defendants are "sellers" of goods under C.R.S. 4-2-103(1)(d) and "merchants" of the subject vehicle under C.R.S. 4-2-104(1).

31. The sale of the subject vehicle was accompanied by express warranties, including affirmations of fact and descriptions of the vehicle regarding its ability to meet emissions standards.

32. The sale of the subject vehicle was accompanied by implied warranties, including that the subject vehicle was merchantable.

33. Defendants advertised the subject vehicle to be a clean diesel vehicle which would average 40 miles to a gallon during highway driving. Defendants advertised that the subject vehicle would emit 25% fewer pollutants into the air than any other car on the road. Defendants knew at the time of these misrepresentations that they had installed a "defeat device" into the subject vehicle which would in fact cause the subject vehicle to emit significantly more pollutants into the air.

34. The undisclosed "defeat device" embedded in the subject vehicle substantially impairs the use, value and safety of the subject vehicle to

**EXHIBIT 1**

plaintiffs.  Further, such "defeat device" made the vehicle unmerchantable at the time of sale and unfit for the purpose intended by plaintiffs.

35.  As a proximate result of defendants' breach of the express and implied warranties, plaintiffs suffered actual, incidental, and consequential damages, in amounts to be determined at trial according to proof.

36.  Plaintiffs are entitled to justifiably revoke acceptance of the subject vehicle under C.R.S. 4-2-711.

37.  Under C.R.S. 4-2-711, plaintiffs are entitled to reimbursement of the purchase price paid for the subject vehicle in addition to the difference between the cost of "cover," as defined in C.R.S. 4-2-712, and the contract price.

38.  Under C.R.S. 4-2-714, Plaintiffs are entitled to the difference between the value of the vehicle when accepted and the value it would have had if the vehicle had been as warranted.

39.  Plaintiffs are also entitled to all incidental and consequential damages resulting from defendants' breach under C.R.S. 4-2-715.

### THIRD CAUSE OF ACTION
**Fraud**

40.  Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 18 of the Complaint, as though fully set forth herein.

41.  Defendants had a duty to accurately represent and market the specifications of the subject vehicle.

42.  Defendants breached this duty by failing to disclose the use of the defeat device and misrepresenting the emission performance of the subject vehicle.

43.  Plaintiffs relied on Defendants' misrepresentation of the "clean diesel, expecting the car to not only comply with emissions standards, but also produce significantly less pollutants than other comparable vehicles. Plaintiffs would not have purchased the vehicle had the truth been known.

**EXHIBIT 1**

44. As a result of Defendants' fraudulent misrepresentation, Plaintiffs purchased the subject vehicle at a premium.

45. Defendants benefitted from the misrepresentation by obtaining a sale and higher purchase price.

### Request for Jury Trial

46. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

### Prayer For Relief

**WHEREFORE**, Plaintiffs pray that judgment be entered against defendants, and plaintiffs be awarded damages from defendants, as follows:

(1) For rescission and repurchase of the subject vehicle and any incidental, consequential, actual, statutory, and punitive damages, and reasonable attorneys fees, not to exceed $74,000;
(2) For costs of suit as specified under C.R.S. 6-1-113(2)(b); and
(3) For such other and further relief as the Court deems just and proper under the circumstance.

Date:   November 15, 2016

By:/s/ Sarah T. McEahern
Sarah T. McEahern, Esq.
Hyde & Swigart
Attorney for Plaintiffs

**EXHIBIT 1**